Filed 5/9/13  P. v. Prado CA6
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>SALVADOR PRADO,<br><br>    Defendant and Appellant. | H037497<br>(Santa Clara County<br>Super. Ct. No. CC597908) |

Appellant Salvador Prado filed a petition in the Santa Clara Superior Court seeking to vacate a conviction he sustained in 1999 for possessing a controlled substance for sale.  The petition presented an unusual difficulty, however, for the judgment he sought to overturn had been rendered in Contra Costa County, not Santa Clara County.  This fact was apparently overlooked by the court below, which mistakenly supposed that defendant was challenging a 2007 conviction he had sustained in Santa Clara County.  After reviewing the record in that case, the court denied the petition on the merits.  On appeal from that order, defendant contends that the court should not have adjudicated the validity of either judgment.  We agree, and will reverse with directions to dismiss the petition without prejudice.

## BACKGROUND

Petitioner is a citizen of Mexico. In 1999 he pled guilty in Contra Costa Superior Court Case No. 115050-7MC to a charge of possessing a controlled substance for sale. In 2001 he was convicted in Contra Costa Superior Court Case No. 0014381 of injuring a spouse with a weapon and making criminal threats. He was sentenced on both convictions to 44 months in prison. In 2003, he was deported to Mexico based on these convictions.

In July 2005, defendant was arrested in Santa Clara County on charges of possessing methamphetamine and associated paraphernalia, and being under the influence of a controlled substance. He failed to appear for a 2005 hearing. Warrants issued, and in 2007 he was again arrested and charged, in Santa Clara Superior Court Case No, CC597908, with the three 2005 offenses plus falsely identifying himself to a police officer. The Contra Costa convictions were alleged as enhancements. Petitioner pled no contest to all charges and admitted a strike prior and a prison prior. In taking the plea, the court advised him of its potential immigration consequences. On February 8, 2008, the court sentenced him to 28 months in prison.

On August 24, 2011, defendant filed a 17-page "Petition for Writ of Error Coram Nobis" with the clerk of the Santa Clara Superior Court.[1] As originally captioned, the petition bore the name of the Santa Clara court, but the docket number 04-115050, which is manifestly a version of the number in the Contra Costa case. However the number of the Santa Clara case, CC597908, had been written in by hand above the Contra Costa number. The petition contained the following allegations: Defendant was presently

---

[1] Petitioner had written to the court in May 2011 inquiring into the status of a *coram nobis* petition he said he had mailed in February. The clerk replied that no such document had been received. Petitioner again wrote in July, referring once again to a petition filed in February. The clerk again denied receipt of any such filing. It was then that defendant filed the petition now under review.

serving time in a federal penitentiary, having been convicted in 2010 of "Illegal Reentry, Title 8, U.S.C. §1326(a), (b)(2)." He had been "charged in this case on April 14, 1999" with transporting methamphetamine and possessing it for sale. He entered a plea to those charges in 1999 "before Hon. John C. Minney."[2] His privately retained attorney, James DeFrantz, failed to inform him that conviction of possession for sale could subject him to deportation. Instead counsel told him he was pleading to simple possession, which could not provide a predicate for deportation.[3] The court too failed to inform him of the potential immigration consequences of conviction. The judge also failed to determine that defendant needed an interpreter to understand the consequences of his plea.

The petition did not expressly identify the venue where the described proceedings took place. It prayed for "relief by Writ of Error Coram Nobis, or in the alternative, an order to vacate judgement entered in this case, of June 17, 1999."

On September 19, 2011, without opposition or a hearing, the Santa Clara County Superior Court denied the petition. Its order contained three explanatory paragraphs. The first and second disposed of the claims of ineffective assistance of counsel on the ground that such claims cannot sustain relief by *coram nobis* petition. (Citing *People v. Hyung Joon Kim* (2009) 45 Cal.4th 1078, 1104; *People v. Villa* (2009) 45 Cal.4th 1063; *People v. Chien* (2008) 159 Cal.App.4th 1283.) The third paragraph disposed of the

---

[2] As of 1999, John C. Minney sat on the bench of the Superior Court of Contra Costa County. (See *People v. Scott* (1999) 76 Cal.App.4th 411.)

[3] The petition attributed other lapses to Attorney DeFrantz, including failure to explain a written waiver of rights form, failure to explain the constitutional rights themselves, and failure to challenge defendant's conviction after sentencing despite having been paid to do so. Defendant alleged that DeFrantz had since lost his license to practice law. Online records of the state bar confirm that an attorney named James DeFrantz resigned on March 15, 2001, "with charges pending." (State Bar of CA :: James Earl Defrantz: <http://members.calbar.ca.gov/fal/Member/Detail/165780> (as of May 6, 2013).)

3

claim of inadequate advisements by the court, as follows: "To the extent Petitioner may be claiming the court never advised him pursuant to PC § 1016.5 any such claim must be rejected. Within the transcript of the change of plea, at page 9 lines 6-25, the full and correct advisement is recorded and acknowledged by petitioner personally." The court did not address the claim of insufficient translation services.

Defendant brought this timely appeal.

## DISCUSSION

Defendant challenges the order denying his petition on four grounds: (1) The Santa Clara court lacked jurisdiction to adjudicate the validity of the conviction defendant challenged, which was his 1999 conviction in Contra Costa County; (2) the court also lacked jurisdiction to adjudicate the validity of the 2008 Santa Clara conviction, since that judgment was final and no proper vehicle was before the court by which to overturn it; (3) the court's adjudication of the Santa Clara conviction violated defendant's right to due process since he had raised no issue concerning that conviction and had been allowed no notice or opportunity to be heard concerning it; and (4) the adjudication of issues outside the pleading was reversible procedural error. Respondent's brief is devoted almost entirely to the question whether the Santa Clara court had fundamental jurisdiction to adjudicate the validity of the Contra Costa judgment and whether defendant forfeited any objection to its doing so by filing his challenge in Santa Clara County.

Defendant is certainly correct in contending that the court below adjudicated an issue not tendered to it, and failed to adjudicate the issue tendered to it. As respondent concedes, the petition "was directed solely at [defendant's] 1999 conviction from Contra Costa County." This intention appears throughout the petition, beginning with the original typewritten docket number, the dates of conviction, and the name of the sentencing judge, all of which point to the Contra Costa matter and not the Santa Clara matter. In addition, the petition repeatedly refers to the allegedly deficient performance

4

of retained Attorney DeFrantz, whereas the hearing transcripts in the Santa Clara matter identify defendant's attorney as Deputy Public Defender Sung Lee. Further, the petition sought to set aside a conviction for possession of a controlled substance *for sale*, whereas defendant's only felony conviction in Santa Clara County was for simple possession.

Respondent also concedes that "the court erred in ruling on the validity of [defendant's] 2008 [Santa Clara] conviction when his petition was limited solely to his 1999 conviction." Again, the concession is well taken. As respondent explicitly acknowledges, the court's misconception is reflected in the final paragraph of its order, where it describes the contents of a "transcript of the change of plea." There is no indication that the court had access to a transcript of any of the Contra Costa proceedings. It could not properly rely on such a transcript without taking judicial notice of it, and it could not properly take judicial notice without giving the parties an opportunity to comment and making the noticed materials part of the record. (Evid. Code, §§ 455, 452, subd. (d).) Since the court did neither of these things, we must presume that it did not consider any transcripts from the Contra Costa matter. (See Evid. Code, § 664 [presumption that official duty has been regularly performed].) It follows that court's description of a change-of-plea transcript can only refer to the transcript of the hearing held February 28, 2008, in the Santa Clara matter.

Remarkably, however, respondent urges us to affirm the judgment despite these seemingly critical errors. According to respondent, their only effect is that "the final paragraph of the court's order must be set aside." "[O]therwise," respondent insists, the order must "be affirmed." No adequate rationale is offered for this disposition. Certainly we cannot treat the order as a proper adjudication of the validity of the Contra Costa judgment when the trial court neither attempted nor intended to adjudicate that issue. The court manifestly intended to rule on only one conviction. The last paragraph reveals that it was the wrong one. We cannot convert its order into an adjudication of the issue

5

actually tendered merely by striking the paragraph that discloses its intention to adjudicate a different issue.

Nor does respondent identify any ground on which the court could have adjudicated the petition, properly construed, adversely to defendant. It is true that the first two paragraphs of the court's order, if sound, would apply equally to any *coram nobis* petition challenging a conviction on grounds of ineffective assistance of counsel. To the extent the court's rationale would dictate that a challenge to the Contra Costa conviction also be rejected. But this would leave at least two other grounds of relief unadjudicated—the Contra Costa court's alleged failure to give adequate advisements concerning the immigration consequences of the plea, and its alleged failure to adequately inquire into the necessity for interpretive services. The court below disposed of the first such ground by referring to the transcript of the Santa Clara plea-taking. It would seem that a similar examination of the Contra Costa record, or other evidentiary inquiry, would be necessary to determine the soundness of defendant's remaining challenges to the Contra Costa judgment. Respondent does not suggest that the court below had any basis on which to adjudicate these questions, and it seems plain that it did not.

It thus seems clear that the order before us cannot be affirmed. The difficult question is what further proceedings, if any, should take place in the court below. We have concluded that whether or not the court has "fundamental jurisdiction" to vacate a Contra Costa judgment of conviction, it should not do so, at least in the absence of extraordinary circumstances. While no court has apparently had occasion to so rule before now, we think it plain that for no superior court should entertain a *coram nobis* petition challenging a judgment of conviction rendered in another county. Rather, underlying procedural principles as well as considerations of comity, convenience, and

efficiency dictate that such a petition should be stayed or dismissed without prejudice to its adjudication in the court that rendered the challenged conviction.

Although the pleading initiating the present proceedings was styled a petition for *coram nobis*, it was actually in part a statutory motion to vacate under Penal Code section 1016.5 (§ 1016.5). This fact was recognized by the trial court, which wrote that defendant's plea for relief must be denied "[t]o the extent [he might] be claiming the court never advised him pursuant to PC § 1016.5." Section 1016.5 prescribes an "advisement" concerning immigration consequences, which it requires trial courts to "administer" when receiving a plea of guilty or nolo contendere. (§ 1016.5, subd. (a).) If a court fails to do so and the defendant shows that this failure may have immigration consequences for him, "the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty." (*Id*., subd. (b).) Moreover, "Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement." (*Ibid*.; see *People v. Dubon* (2001) 90 Cal.App.4th 944, 953 [presumption is rebuttable and affects burden of proof].)

Defendant alleged in his petition that the trial court failed to "explain to [defendant] that his plea and conviction would result in a change in his immigration status." As the trial court recognized, this is an invocation, albeit arguably imperfect, of section 1016.5. To that extent, then, the pleading must be viewed as a motion under that statute, not a petition for *coram nobis* relief. This follows from the fact that relief is available by *coram nobis* only when " 'no other remedy exists' " (*People v. Hyung Joon Kim, supra,* 45 Cal.4th 1078, 1091) and "is unavailable when a litigant has some other remedy at law" (*id.* at p. 1093). Thus the statutory remedy provided by section 1016.5 "supplants" the common law remedy "where the trial court fails to advise a defendant concerning specified immigration consequences and/or the defendant is unaware of

7

same." (*People v. Carty* (2003) 110 Cal.App.4th 1518, 1524, capitalization & italics omitted.) It follows that defendant's exclusive remedy for the court's alleged failure to communicate the required advisements is a motion under that section.[4]

A motion to vacate a judgment under section 1016.5 can *only* be entertained by the court that rendered the judgment. This follows because "a motion is not an independent remedy. It is ancillary to an on-going action . . . ." (*Lewis v. Superior Court* (2008) 169 Cal.App.4th 70, 77.)[5] Naturally, then, a motion "must be made in the court in which the action is pending." (Code Civ. Proc., § 1004.) Therefore when section 1016.5 refers to a motion before "the court," it must be understood to refer to the court that received the plea and rendered the judgment of conviction. (See 6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 3, p. 430 ["A motion may be made only in a pending main action or proceeding."].) It follows that such a motion can only be entertained by that court. And since the motion provides the exclusive remedy where it applies, relief on the grounds stated cannot be obtained from any other court.

---

[4] That the pleading is styled a *coram nobis* petition does not preclude its interpretation as a motion under the statute. (See *People v. Villa, supra,* 45 Cal.4th 1063, 1067-1068, quoting *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 511 [" 'The label given a petition, action or other pleading is not determinative; rather, the true nature of a petition or cause of action is based on the facts alleged and remedy sought in that pleading.' "].)

[5] In *Lewis v. Superior Court*, *supra*, 169 Cal.App.4th at p. 77, this court went on to quote *People v. Sparks* (1952) 112 Cal.App.2d 120, 121, to the effect that a motion " ' "is confined to incidental matters in the progress of the cause," ' " and " ' "relates to some question collateral to the main object of the action and is connected with, and dependent on, the principal remedy." ' " That language was unnecessary to our decision, and on further examination we find it inaccurate and potentially mischievous. Many motions are more than "incidental" to the main cause; indeed, some motions can be *dispositive* of the underlying matter, including (in the criminal context alone), motions for acquittal and motions, such as that expressly contemplated by section 1016.5, to vacate the judgment.

8

Indeed, a similar logic would seem to apply to *coram nobis* proceedings in general, at least when brought in the trial court rather than a reviewing court. (See Pen. Code, § 1265 [requiring that where conviction was affirmed on appeal, *coram nobis* relief be sought in affirming court].) A petition for *coram nobis*, at least in the trial court, is in essence a motion to vacate the judgment. (See *People v. Hyung Joon Kim, supra,* 45 Cal.4th 1078, 1096 ["a nonstatutory motion to vacate has long been held to be the legal equivalent of a petition for a writ of error *coram nobis*"]; *People v. Adamson* (1949) 34 Cal.2d 320, 325 [defendant's petition for *coram nobis* was "in legal effect, a motion to vacate a judgment"]; 6 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Criminal Judgment, § 199, p. 244 ["the remedy is, in effect, merely a motion to vacate the judgment, and might appropriately be so designated"]; cf. *People v. Gallardo* (2000) 77 Cal.App.4th 971, 982 ["the terms 'motion to vacate' and 'petition for writ of error *coram nobis*' are often used interchangeably and the two procedures are similar in scope and effect"].) Of particular relevance is the fact that, like a motion to vacate, it is viewed as a further proceeding *in the original case*. (See *People v. Allenthorp* (1966) 64 Cal.2d 679, 681 ["The petition for writ of error *coram nobis* operates as a part of the proceedings of the original case; it does not introduce a new or separate adversary proceeding."].) This conception is apparently shared by the clerk of the Santa Clara court, who did not assign a new docket number to defendant's petition but docketed it under the number of the original case against him in that court.

It follows that, just as a motion must be adjudicated by the court hosting the underlying action, so a petition for *coram nobis* relief must—at least in the absence of exceptional circumstances—be heard by the court that entered the underlying conviction. This is true whether or not the superior court in one county has "jurisdiction in the fundamental sense" to entertain challenges to a criminal conviction rendered in another county. Even if it has the naked power to do so, a court should ordinarily refrain from

9

exercising such a power, no matter who seeks to invoke it. Rather, in the absence of some good reason to do otherwise, a court asked to determine the validity of a judgment of conviction from another county should decline to do so, and should either stay the matter or dismiss it without prejudice to relief in the county where the judgment was rendered.

This conclusion is supported by a number of additional factors, some grounded in procedural theory, and some in concrete considerations of efficiency and convenience. To begin with, "[i]t is often said that where two courts have concurrent jurisdiction over a class of cases, the one that first assumes jurisdiction over the subject matter of a particular controversy takes it exclusively, and the other court's jurisdiction may no longer be asserted over that subject matter." (2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 427, p. 1077.)[6] Insofar as a *coram nobis* proceeding is "a part of the proceedings of the original case" rather than "a new or separate adversary proceeding" (*People v. Allenthorp*, *supra*, 64 Cal.2d at p. 681), the court presiding over the original case may be said to have "assume[d] jurisdiction" over its subject matter to the exclusion of any other court. In this view even if another court might otherwise possess fundamental jurisdiction to determine the validity of the judgment, the original court's

---

[6] "Under the rule of exclusive concurrent jurisdiction, 'when two superior courts have concurrent jurisdiction over the subject matter and all parties involved in litigation, the first to assume jurisdiction has exclusive and continuing jurisdiction over the subject matter and all parties involved until such time as all necessarily related matters have been resolved.' [Citations.] The rule is based upon the public policies of avoiding conflicts that might arise between courts if they were free to make contradictory decisions or awards relating to the same controversy, and preventing vexatious litigation and multiplicity of suits. [Citations.] The rule is established and enforced not 'so much to protect the rights of parties as to protect the rights of Courts of co-ordinate jurisdiction to avoid conflict of jurisdiction, confusion and delay in the administration of justice.' [Citation.]" (*Plant Insulation Co. v. Fibreboard Corp.* (1990) 224 Cal.App.3d 781, 786-787.)

jurisdiction would continue—and would remain exclusive—with respect to any motion for relief from the judgment.

The rule of prior exclusive concurrent jurisdiction is sometimes said not to be jurisdictional in the sense that it categorically ousts a second court of power to act, but to rest instead on considerations of discretion and policy. (See 2 Witkin, *supra*, Jurisdiction, § 427, pp. 1077, 1078 [contrasting "*Jurisdictional Theory*" with "*Comity Theory*"].) This might open the door, at least in theory, to one court adjudicating a challenge to a criminal judgment rendered in another county. We cannot, however, readily imagine circumstances that would justify such a procedure. The relative inconvenience of attempting to adjudicate such matters in any county other than the originating one is obvious. It is the originating county's clerk of court who is charged by statute with the obligation to preserve the records of the case. (See Gov. Code, §§ 69846, 68152, subds. (e)(2), (j)(7).) For a court in another county to review those records, they—or certified copies—must be transmitted to that court, and the procedures for taking judicial notice of them must, on demand, be pursued. If contested issues of fact are presented, the most likely witnesses—attorneys and other participants in the original prosecution—are more likely to be found in and around the rendering court than in another county. The office of the district attorney in the rendering county may well claim a distinct interest in the matter, but could not be assured of adequate notice and opportunity to participate unless the court fashioned special procedures to ensure that end. And if the court determined that the defendant was entitled to appointed counsel (see *People v. Shipman* (1965) 62 Cal.2d 226, 231), it would have to decide which public defender's office can, and should, be required to undertake that assignment. The office in the county where the challenge is brought may well believe that its budget, and the taxpayers who finance it, should not have to bear this additional burden; but the office in the originating county might protest with some justice that it should not be required to

11

bear the expense involved in travel from its location to a court in a distant county. Moreover, the power of a court to appoint an officer outside its county is, we feel safe in saying, an untested issue of considerable complexity.

Given these inefficiencies and complications, we are frankly surprised to find the Attorney General implicitly endorsing a regime that would seem to entitle any criminal defendant to seek *coram nobis* relief in any of California's 56 counties, regardless of where the challenged judgment was entered. Respondent characterizes the question as one only of venue, and cites the Supreme Court's holding in *People v. Simon* (2001) 25 Cal.4th 1082, 1104, that a defendant forfeits objections to venue by failing to lodge a timely objection. Insofar as the question really is one of venue, it is undoubtedly true that the defendant's filing in the wrong county effects a forfeiture of the objection. But we do not believe the court in such a case should or properly can even reach the question of venue. Insofar as the proceeding is a continuation of the underlying case, venue has already been laid in the originating county. Viewed in the analytical framework proposed by respondent, the question is not one of forfeiture but of whether the defendant is entitled to unilaterally *change* the venue already fixed in the originating county. On the face of such a petition, it belongs in another county—not because that is the correct "venue" but because it is the correct *forum*, having first asserted jurisdiction over the matter and having the almost certain ability to adjudicate the defendant's claim for relief more efficiently and completely than any other forum.

In sum, the court below erred by treating the petition as one challenging a Santa Clara conviction. Had the court viewed the petition correctly—as one challenging a Contra Costa conviction—the court would have erred by deciding it on the merits. Any such challenge should and must be heard by the courts of that county. We must therefore reverse the order under review, but since no further substantive proceedings can take place on the present petition, we will direct the court to dismiss it without prejudice.

12

## DISPOSITION

The order denying the petition for *coram nobis* relief on the merits is reversed. The trial court is directed to dismiss the petition without prejudice to further proceedings in a proper court.

_____
                    RUSHING, P.J.

WE CONCUR:

_____
          PREMO, J.

_____
          ELIA, J.

13