Filed 6/16/14  P. v. Ramirez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>RICARDO RAFAEL RAMIREZ,<br><br>   Defendant and Appellant. | B251246<br>(Los Angeles County<br>Super. Ct. No.  PA018834) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dalila C. Lyons, Judge.  Affirmed.

Keli M. Reynolds for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Ricardo Rafael Ramirez, a resident alien subject to deportation as a result of a plea to an aggravated felony in 1995, appeals the denial of his motion to vacate the plea under Penal Code section 1016.5 (section 1016.5). A prior motion to vacate the same plea under the same provision was denied and affirmed on appeal, but appellant maintains inadequate representation in the prior proceeding justifies consideration of his successive motion. Assuming without deciding that the successive motion was permitted, we affirm on the merits.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Prior Proceedings*

1. *1995 Plea*

In 1995, appellant pled guilty to one count of having violated Health and Safety Code section 11351.5, possession for sale of cocaine base. He was sentenced to 180 days in jail and three years formal probation. Appellant was represented in this proceeding by Alan Budde of the Public Defender's Office. Deputy District Attorney (DDA) Burton Schneirow handled the plea for the prosecution. Judge Charles Pevin was the presiding judicial officer. At the time, appellant, born in Columbia, had permanent resident status. The minute order stated: "Defendant advised of possible effects of plea on any alien/citizenship . . . status."[1]

2. *Deportation Proceedings*

In 2001, deportation proceedings were instituted to return appellant to Columbia. The notice stated he was subject to removal for having been convicted of a violation of law relating to a controlled substance, "including a drug

---

[1] No reporter's transcript of the proceeding is available.

trafficking crime . . . ." His immigration attorney, Steven Espinoza, advised him to apply for a waiver. The waiver was denied, and in 2004, appellant was ordered deported. Espinoza advised him to have the 1995 conviction expunged. Appellant obtained an order of expungement in 2006. The expungement had no affect on his status and in September 2011, he was detained by the Department of Homeland Security in preparation for deportation.[2]

### 3. *Prior Motion to Vacate Guilty Plea*

After his detention, appellant hired attorney Shani Kochav to represent him. In November 2011, Kochav filed a motion pursuant to section 1016.5 to vacate appellant's 1995 guilty plea.[3] The moving papers alleged that the court failed to advise appellant of the possible adverse immigration consequences of entering the 1995 guilty plea. However, appellant's declaration filed in support of the motion stated only that at the time appellant entered the plea, his trial counsel -- Budde -- had failed to inform him of the immigration consequences of the guilty plea. The declaration said nothing about whether the court or the deputy district attorney

---

[2]    In 2012, appellant was released from detention on a bond.

[3]    Section 1016.5, subdivision (a) provides that prior to accepting a plea of guilty or nolo contendere to any crime (other than an infraction), the court "shall administer" the following advisement on the record to the defendant: "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Under subdivision (b): "If, after January 1, 1978, the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which the pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty."

3

advised him of the consequences of the plea. Moreover, the motion did not include proof that appellant was facing deportation as a result of the 1995 plea.[4]

In its opposition to appellant's motion, respondent submitted the declaration of DDA Schneirow. Although he had no independent recollection of appellant's case, Schneirow stated that his "custom and practice when taking felony pleas was to advise defendants of the immigration consequences in the language of [section] 1016.5 in compliance with [section] 1016.5 that if they were not citizens of the United States their plea may result in their deportation, exclusion from admission to the United States, or denial of naturalization." Schneirow further stated that Judge Pevin "was vigilant in making sure that the immigration advisement required by [section] 1016.5 was given at the time of the plea."

In a declaration filed in conjunction with the reply brief, Kochav stated that she had visited appellant in the detention facility where he was being held and that appellant had stated to her "the only information he was given regarding the instant plea was the possibility of taking the plea and receiving a 6-month sentence, or going to trial and risking a 5-year sentence"; "he d[id] not recall being advised by the Deputy District Attorney or the Court of the possible immigration consequences to his plea." Respondent objected to Kochav's declaration as hearsay. The court sustained the objection and denied the motion.

### 4. *Prior Appeal*

Appellant's appointed appellate lawyer, Linn Davis, filed a brief raising no issues, but asking this court to independently review the record on appeal pursuant

---

[4] Appellant suffered two subsequent convictions: in 2000, he pled no contest to being under the influence of a controlled substance (Health & Saf. Code, § 11550); in 2008, he pled no contest to infliction of corporal injury (Pen. Code, § 273.5). Prior to entering his pleas in both cases, appellant was advised, pursuant to section 1016.5, that doing so could subject him to deportation, exclusion from admission or denial of naturalization.

to *People v. Wende* (1979) 25 Cal.3d 436.[5] This court conducted an independent review and affirmed. In the nonpublished opinion we stated: "'To prevail on a motion to vacate under section 1016.5, a defendant must establish that (1) he or she was not properly advised of the immigration consequences as provided by the statute; (2) there exists, at the time of the motion, more than a remote possibility that the conviction will have one or more of the specified adverse immigration consequences; and (3) he or she was prejudiced by the nonadvisement. [Citations.] On the question of prejudice, defendant must show that it is reasonably probable he would not have pleaded guilty or nolo contendere if properly advised. [Citation.]'" (Quoting *People v. Totari* (2002) 28 Cal.4th 876, 884.) We concluded appellant failed to establish the first element because Schneirow's declaration indicated he had given the requisite advisement and appellant "submitted no admissible evidence that Schneirow failed to give the advisement." We specifically found that the trial court "properly declined to admit Kochav's declaration describing appellant's statements to her."

B. *Underlying Motion to Vacate*

After the affirmance of the order denying the first motion became final and the remittitur issued, appellant filed the underlying motion.[6] Appellant alleged that the court had failed to advise him of the consequences of his plea as required by section 1016.5 -- that the plea could lead to "deportation, exclusion from admission

---

[5] After reviewing the record, Davis wrote to appellant stating Kochav had prepared a defective motion and that the trial court "had no choice but to deny the motion to vacate." Because the time for filing a motion for reconsideration had passed, Davis advised appellant to file a new motion in superior court.

[6] While the appeal was pending, appellant, acting in pro per, filed a second motion to vacate. That motion was taken off calendar because of the pending appeal. A third motion was filed and taken off calendar by counsel after the opinion was filed but before the remittitur issued.

to the United States, or denial of naturalization under the laws of the United States." He further asserted that his prior attorney, Kochav, had committed numerous errors that caused the first motion to be denied.

In his supporting declaration, appellant stated he pled guilty to avoid state prison and a possible five-year term. He said he was not advised that his conviction could result in deportation from, exclusion from admission to, or denial of naturalization in the United States. He stated he "remember[ed] very well" the specific admonitions he was given by the prosecutor and the court, and that "the District Attorney never said [he] would be deported, excluded from admission or denied naturalization as a result of [his] plea." The declaration stated that had appellant known of the risk of deportation, he would have insisted on a trial or offered to plead to a charge with a harsher sentence but no immigration consequences. He claimed he "certainly would have taken the advantage of discussing [his] case with an immigration attorney," had anyone warned that he was subject to deportation or exclusion from admission to the United States. The declaration further stated that appellant had told Kochav in 2012 that no one, including the court or the deputy district attorney, warned him that immigration problems could arise as a consequence of his guilty plea.[7]

The court denied the motion to vacate. At the hearing, the court noted that the motion had been asserted on grounds raised and rejected in the prior motion and appeal, and that appellant had failed to establish an exception to the rule barring reconsideration of claims. Nevertheless, the court stated that it had taken into consideration all of the new evidence -- including the new declaration in

---

[7] Appellant also submitted a declaration from an immigration attorney who stated that the crime to which appellant pled in 1995 was an "aggravated felony drug trafficking crime," requiring mandatory deportation. According to the attorney, such crimes render the offender ineligible for waiver or cancelation of removal by an immigration judge and result in a permanent bar from reentry to the United States. In addition, expungement of such offense will not eliminate the immigration consequences.

which appellant claimed not to have been advised of the immigration consequences by anyone in 1995, and the new exhibits clarifying that the 1995 conviction was the basis for the deportation order -- as well as the Court of Appeal decision, the opposition to the first motion, and the reply filed by Kochav. The court stated that even considering the new evidence, "[appellant] failed to establish all of the elements of Penal Code Section [1016.5]" and "[respondent] carried its burden under either the preponderance of the evidence or the clear and convincing evidence standard." Finally, the court found that "[appellant] has failed to establish that [Kochav] was so deficient [as to fall] below an objective standard of reasonableness," or that "the deficient performance prejudiced [appellant]," because "[appellant] did not make any showing that there was a reasonable probability that but for the motion[] counsel errors this court would have granted the motion." Appellant appealed the order denying the motion to vacate.[8]

## DISCUSSION

The Supreme Court has said that "a litigant should raise a claim at the earliest practicable opportunity, and cannot -- without persuasive justification -- keep returning to the court for second and third bites of the same piece of fruit" and that "'"a defendant is not permitted to try out his contentions piecemeal by successive proceedings attacking the validity of the judgment against him."'" (*In re Reno* (2012) 55 Cal.4th 428, 497, fn. omitted, quoting *In re Clark* (1993) 5 Cal.4th 750, 768.) It is equally true that a petitioner who is represented by counsel "has a right to assume that counsel is competent and is presenting all potentially

---

[8] In its original brief, respondent contended the appeal should be dismissed because appellant failed to obtain a certificate of probable cause. Respondent abandoned that contention following our Supreme Court's decision in *People v. Arriaga* (2014) 58 Cal.4th 950, 958-960, holding that such certificate is not required to appeal the denial of a motion to vacate under section 1016.5.

7

meritorious claims." (*In re Clark, supra,* at p. 780.) "If, therefore, counsel failed to afford adequate representation in a prior habeas corpus application, that failure may be offered in explanation and justification of the need to file another petition" as long as the petitioner "allege[s] with specificity the facts underlying the claim that the inadequate presentation of an issue or omission of any issue reflects incompetence of counsel, i.e., that the issue is one which would have entitled the petitioner to relief had it been raised and adequately presented in the initial petition, and that counsel's failure to do so reflects a standard of representation falling below that to be expected from an attorney engaged in the representation of criminal defendants." (*Ibid.*)

Appellant cites no authority for the proposition that this rule permits successive filings of petitions to vacate under section 1016.5. However, even were we to assume that it does, we would find no basis for reversing the trial court's order denying appellant's successive motion to vacate his 1995 plea. Despite its misgivings about the procedure, the court addressed the merits of the new motion, taking into consideration all the new evidence, as well as that filed in connection with the earlier motion, and concluded that respondent prevailed under either a preponderance of the evidence or clear and convincing evidence standard. The court's finding is supported by substantial evidence.

As stated, "[t]o prevail on a motion to vacate under section 1016.5, a defendant must establish that (1) he or she was not properly advised of the immigration consequences as provided by the statute; (2) there exists, at the time of the motion, more than a remote possibility that the conviction will have one or more of the specified adverse immigration consequences; and (3) he or she was prejudiced by the nonadvisement. [Citations.] On the question of prejudice, defendant must show that it is reasonably probable he would not have pleaded guilty or nolo contendere if property advised. [Citation.]" (*People v. Totari*,

8

*supra*, 28 Cal.4th at p. 884.) As immigration consequences may arise years after the plea, section 1016.5, subdivision (b) provides a presumption that favors the petitioner where the pertinent records showing whether such advisement was given have been destroyed or cannot be located: "'[a]bsent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement.'" (See *People v. Arriaga*, *supra*, 58 Cal.4th at p. 961 [where no reporter's transcript exists and minute order does not set forth in detail the advisements given, "section 1016.5(b)'s presumption of nonadvisement applies"].) In *People v. Arriaga*, the Supreme Court resolved the standard of proof issue, holding that once the presumption arises the prosecution is required to establish that the section 1016.5 advisements were given by a preponderance of the evidence. (58 Cal.4th at pp. 962-963.) The court further held that because the presumption implements a public policy determination by the Legislature, it affects the burden of proof rather than the burden of producing evidence; in other words, "the presumption of nonadvisement established by section 1016.5's subdivision (b) is controlling unless and until the prosecution rebuts it by proving it is more likely than not that the defendant was properly advised." (*Id.* at p. 963, italics deleted; see *People v. Dubon* (2001) 90 Cal.App.4th 944, 953 ["A presumption affecting the burden of proof '. . . imposes upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact.'"].)

The evidence here supported the court's findings under the applicable preponderance of the evidence standard. Appellant's assertion that he had not been told by anyone that he could be deported, excluded from admission or denied naturalization as a result of his 1995 plea was refuted by the statements in Schneirow's declaration that he had a consistent practice of advising defendants of the immigration consequences of plea agreements using the language contained in

section 1016.5, and that Judge Pevin was diligent in making sure that the statutory advisements were given.[9] The minute order supported Schneirow's declaration, reflecting that appellant had been "advised of [the] possible effects of [the] plea on any alien/citizenship . . . status." Appellant's claim that he would not have pled guilty had he known of potential immigration consequences and would have "taken the advantage of discussing [his] case with an immigration attorney" is severely undermined by the fact that he subsequently pled nolo contendere to two additional offenses in 2000 and 2008, after being expressly advised that his pleas could result in deportation, exclusion from admission or denial of naturalization. Thus, the evidence supported both a finding that the advisement was given and that in any event, appellant failed to demonstrate prejudice.

Our conclusion that the evidence presented by respondent was sufficient to rebut the presumption is supported by *People v. Arriaga*, *supra*, 58 Cal.4th 950, where the Supreme Court held that the trial court reasonably found the prosecution had carried its burden of proving the defendant received the proper advisements. In the trial court, the defendant had testified that he did not remember whether he was told of the possible immigration consequences of pleading guilty. The prosecutor had testified that although he did not recall the defendant specifically, it was his practice to advise defendants of the immigration consequences of pleading

_____

[9]     We note that although appellant stated in the most recent declaration that he "remember[ed] very well" that the deputy district attorney never warned him of the possibility of being deported, excluded from admission or denied naturalization as a result of the plea, in the prior proceeding, appellant's counsel stated appellant had told her "he d[id] not recall" being so advised.

Appellant contends he should have been provided an evidentiary hearing and an opportunity to cross-examine Schneirow. Our Supreme Court has made clear that "no authority . . . require[s] [trial] courts to hold live evidentiary hearings on section 1016.5 motions," even when resolving evidentiary conflicts. (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 201.) Moreover, the record does not reflect that appellant made such a request. In any event, as Schneirow admitted he did not specifically recall appellant and was testifying concerning his general practice, it is difficult to see what cross-examination would have accomplished in this instance.

guilty or no contest, and he was able to recite in detail the advisement he routinely gave. This testimony, when coupled with a minute order containing language identical to that contained in the minute order from appellant's 1995 plea hearing, "support[ed] the trial court's finding that defendant was told of the immigration consequences of pleading guilty." (*Id*. at p. 964.)

Similarly, in *People v. Dubon, supra,* 90 Cal.App.4th 944, the petitioner contended the trial court had not advised him of the immigration consequences of his nolo contendere plea 13 years earlier. The judge who presided testified that "[h]is practice and habit was to advise defendants as required by Penal Code section 1016.5 in every case"; "he was 'pretty careful about it[,] . . . did not do very quick pleas[,] [and] really did [his] best to make sure that the person understood'"; and he typically told defendants, "'If you're not a citizen, entering a plea could result in your being deported, denied admission to the United States and denied citizenship.'" (*Id.* at p. 949.) The Court of Appeal held this testimony, combined with a minute order stating the defendant had been advised of the possible effects of the plea on "'any alien/citizenship . . . status,'" was "sufficient to meet the People's burden of proof and rebut the statutory presumption." (90 Cal.App.4th at pp. 955, 956.)

Here, evidence submitted to rebut the presumption -- the declaration of DDA Schneirow relating his and the presiding judge's regular practices, supported by the language of the minute order -- was comparable to the evidence found adequate in *People v. Arriaga* and *People v. Dubon*. In addition, appellant's assertion that he would have rejected the plea offer had he received a detailed advisement was suspect, given that he thereafter pled to two additional offenses after being properly advised of the potential immigration consequences. In short, ample evidence supported the trial court's finding that the presumption of section 1016.5,

subdivision (b) had been rebutted by a preponderance of the evidence.

Accordingly, we discern no error in the trial court's denial of the motion to vacate.

## DISPOSITION

The order denying the motion to vacate is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.