[No. B142170. Second Dist., Div. Three. July 19, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN RAMON DUBON, Defendant and Appellant.

## COUNSEL

Carlos Vellanoweth, John Wolfgang Gehart and Elena Yampolsky, under appointments by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Marc E. Turchin and Karen Bissonnette, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ALDRICH, J.**—Appellant Juan Ramon Dubon appeals from an order denying his petition for writ of error *coram nobis*, by which he sought to withdraw his plea of nolo contendere to allegations that he sold or transported marijuana in violation of Health and Safety Code section 11360, subdivision (a). Dubon contends the trial court failed to advise him of the immigration consequences of his nolo contendere plea as mandated by Penal Code section 1016.5. That statute requires that, before accepting a plea of guilty or nolo contendere to any offense punishable as a crime under

California law, the trial court must advise the defendant that if he or she is not a United States citizen, conviction of the charged offense could result in deportation, exclusion from admission to the United States, or denial of naturalization. The statute further provides that absent a record that the required advisements were given, the defendant is presumed not to have received them. We affirm the trial court's denial of the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Dubon, a citizen of Honduras, had lived in the United States since 1978.[1] In April 1987, he was charged with violating Health and Safety Code section 11360, subdivision (a), sale or transportation of marijuana. At a preliminary hearing, a police officer testified to the following facts. On February 12, 1987, as part of an undercover drug buy, the officer stopped in front of a liquor store where he had previously purchased narcotics. Dubon and his codefendant, Carlos Aguilar, were standing nearby. The officer said hello to Dubon. Dubon asked whether the officer was looking for marijuana and how much he wished to purchase. After the officer stated he wished to purchase "a dime," or $10 worth of the drug, Dubon told the officer "his friend would get it" and that "they had good weed." Aguilar sold the marijuana to the officer while Dubon stood by. Dubon did not give the officer any drugs or take any money during the transaction.

In May 1987, in case No. A796651, Dubon pled nolo contendere to the charge. The trial court suspended imposition of sentence and placed Dubon on three years' probation, the first three days to be spent in jail. Dubon was given credit for three days already spent in custody.

Approximately 12 years later, in 1999, the Immigration and Naturalization Service (INS) arrested Dubon, held him in custody for six months, and, on August 31, 1999, ordered him deported, apparently as a result of the 1987 conviction.

On January 14, 2000, Dubon petitioned the trial court for a writ of error *coram nobis*. In the petition, Dubon contended the trial court in the 1987 case had not advised him of the immigration consequences of his nolo contendere plea. Dubon asserted that had he known of the immigration consequences of his plea, he would not have accepted a plea bargain but would instead have "exercised [his] right to a jury trial and fought for an acquittal rather than suffer permanent banishment from the United States."

---

[1] Neither Dubon's testimony at the hearing below, nor his declaration in support of his petition for writ of error *coram nobis* established his date of entry or how long he has remained in the United States. However, Dubon's brief on appeal asserts he first entered the United States in 1978, and the People apparently do not challenge this assertion.

The trial court conducted a hearing on Dubon's petition. The parties agreed that Dubon's case file contained no reporter's transcript for the hearing at which Dubon pled nolo contendere. Because the court reporter's notes were destroyed as a matter of course after 10 years, the transcript was no longer available.

Dubon testified to the following. He was never advised of the immigration consequences of the conviction. He would not have pleaded nolo contendere had he known of such consequences. He was not guilty of the 1987 charge, but pleaded guilty to obtain the benefits of the plea bargain. In 1982, Dubon had pleaded guilty to misdemeanor possession of marijuana. In 1983, he had been charged with felony possession of marijuana for sale, but the matter was dismissed.

The superior court file for case No. A796651 contains a minute order dated May 11, 1987, reflecting Dubon's nolo contendere plea. A box is checked on the order, indicating "Defendant advised and personally waives his right to confrontation of witnesses for the purpose of cross-examination, and waives privilege against self-incrimination. Defendant advised of possible effects of plea on any alien/citizenship/probation/parole status."

Retired Judge Robert Altman, the trial judge in Dubon's 1987 case, testified at the *coram nobis* hearing as follows. He "always" took defendants' pleas himself, rather than allowing the district attorneys to take them. His practice and habit was to advise defendants as required by Penal Code section 1016.5 in every case. He testified that he was "pretty careful about it. I did not do very quick pleas. I really did my best to make sure that the person understood. [¶] I didn't rush pleas. I know some people just buzz right through them. I didn't do that." He typically told defendants that, "[I]f you're not a citizen, entering a plea could result in your being deported, denied admission to the United States and denied citizenship." Judge Altman, who typically took over 75 pleas from defendants each month, had no independent recollection of Dubon and had no specific recollection of advising Dubon as required by section 1016.5. However, he had written notes on Dubon's probation report, as was his custom. Those notes indicated, inter alia, that Dubon had come to the United States from Honduras in 1978. On cross-examination, Judge Altman was asked whether the law required that, absent a record, the defendant was presumed not to have received the required advisement. He replied, "I do not know. I do not remember the specific language of the statute and I do not know."

The trial court denied Dubon's petition. It reasoned that whether the People had rebutted the presumption raised by Penal Code section 1016.5

was a question of fact. The court opined, "I understand we have no record, so that shifts the presumption to the People to show that he was advised. [¶] The question is: which then over balances? The testimony of Judge Altman, in each and every case this is what he does? Or your client's testimony that 12 years after the event he's caused to recall this and he remembers that he wasn't?" The trial court expressed its doubt about Dubon's credibility, explaining, "[I]t's common sense. [¶] It's his third time through the system. He gets the advice, and 12 years later he realizes he's about to be deported and he doesn't have any memory of having got[ten] the advice. That makes sense to me." The court denied the petition on the ground that, "I believe Judge Altman's testimony over balances the defendant's credibility and I find that the defendant was advised under 1016.5."

## CONTENTIONS

Dubon's primary contention on appeal is that the trial court erred by finding he was advised in compliance with Penal Code section 1016.5 without the reporter's transcript in case No. A796651. Dubon urges that the prosecution failed to rebut the statutory presumption that, absent a record advisements regarding immigration consequences of a plea were given, a defendant is presumed not to have received them (§ 1016.5). The People, on the other hand, contend the minute order, alone or coupled with Judge Altman's testimony, was sufficient to meet the record requirement of section 1016.5.

## DISCUSSION

1. *Applicable legal principles.*

■ A petition for writ of error *coram nobis* is equivalent to a motion to vacate the judgment, and the two terms are sometimes used interchangeably. (*People v. Gallardo* (2000) 77 Cal.App.4th 971, 982 [92 Cal.Rptr.2d 161].) A trial court's denial of a *coram nobis* petition is an appealable order, unless the *coram nobis* petition failed to state a prima facie case for relief, or the petition raised issues that were, or could have been, raised in other proceedings. (*Ibid.*) "A writ of *coram nobis* is generally used to bring factual errors or omissions to the court's attention. [Citation.] 'The writ will properly issue only when the petitioner can establish three elements: (1) that some fact existed which, without his fault or negligence, was not represented to the court at the trial and which would have prevented the rendition of the judgment; (2) that the new evidence does not go to the merits of the issues of fact determined at trial; and (3) that he did not know nor could he have, with due diligence, discovered the facts upon which he relies any sooner than the

point at which he petitions for the writ. [Citations.]' [Citations.]" (*People v. Ibanez* (1999) 76 Cal.App.4th 537, 544-545 [90 Cal.Rptr.2d 536]; *People v. Gallardo, supra,* at p. 987.) We review a trial court's denial of a petition for writ of error *coram nobis* for abuse of discretion. (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 192 [96 Cal.Rptr.2d 463, 999 P.2d 686] (*Zamudio*).)

Penal Code section 1016:5, subdivision (a), requires that a trial court, prior to accepting a defendant's plea of guilty or nolo contendere to an offense punishable as a crime under California law, advise the defendant that: "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Subdivision (b) of section 1016.5 provides in pertinent part: "If, after January 1, 1978, the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty. *Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement.*" (Italics added.)

The legislative purpose behind Penal Code section 1016.5 is clearly stated in subdivision (d): "The Legislature finds and declares that in many instances involving an individual who is not a citizen of the United States charged with an offense punishable as a crime under state law, a plea of guilty or nolo contendere is entered without the defendant knowing that a conviction of such offense is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. Therefore, it is the intent of the Legislature in enacting this section to promote fairness to such accused individuals by requiring in such cases that acceptance of a guilty plea or plea of nolo contendere be preceded by an appropriate warning of the special consequences for such a defendant which may result from the plea."

■ To prevail on a motion brought pursuant to Penal Code section 1016.5, a defendant must establish: (1) he or she was not properly advised of the immigration consequences as provided by the statute; (2) there exists, at the time of the motion, more than a remote possibility that the conviction

will have one or more of the specified adverse immigration consequences; and (3) he or she was prejudiced by the nonadvisement, i.e., if properly advised, he or she would not have pleaded guilty or nolo contendere. (*Zamudio, supra,* 23 Cal.4th at pp. 192, 199-200, 209.)

*2. The trial court did not err by finding the evidence presented at the hearing overcame the statutory presumption and established Dubon was properly advised.*

We address the first prong of the statutory test, whether Dubon was properly advised.[2] As noted, Penal Code section 1016.5 provides that, "[a]bsent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement." █ A presumption is not evidence; rather, it is "an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (a).) All presumptions are either conclusive or rebuttable. (Evid. Code, § 601.) Conclusive presumptions are those contained in article 2, chapter 3, of division 5 of the Evidence Code, or otherwise "declared by law to be conclusive." (Evid. Code, § 620; *Hernandez v. Superior Court* (1992) 9 Cal.App.4th 1183, 1187 [12 Cal.Rptr.2d 55].)

█ The Legislature did not specify that the presumption created by Penal Code section 1016.5 is conclusive; thus, the presumption is rebuttable, a proposition apparently not challenged by Dubon. (*Perales v. Department of Human Resources Dev.* (1973) 32 Cal.App.3d 332, 338 [108 Cal.Rptr. 167] [fact statute did not declare presumption conclusive was persuasive evidence presumption was rebuttable].)

█ Every rebuttable presumption is either "(a) a presumption affecting the burden of producing evidence or (b) a presumption affecting the burden

---

[2]The People contend the trial court "could . . . have properly denied the petition" as untimely, because Dubon did not seek relief until almost 13 years after his plea. However, the trial court did not deny the petition on this basis, and we do not read the People's brief as arguing the court was required to do so. In any event, the People have failed to establish Dubon's lack of diligence. While a defendant waives his right to complain he was not advised of the collateral consequences of a guilty plea in the absence of a timely objection, (*Zamudio, supra,* 23 Cal.4th at p. 203) "that procedural bar does not apply where the defendant has no reason to question the accuracy of the trial court's advisement." (*Ibid.*) In *Zamudio,* the record did not pinpoint when the defendant first knew he risked actual exclusion from admission to the United States. There, the defendant argued he had not been properly advised of the immigration consequences of a plea that had been made more than five years earlier. Our Supreme Court found, "[a]bsent evidence that defendant long ago had cause to question the accuracy of the trial court's 1992 immigration advisements, to hold he should have objected to them earlier would be unfair. This conclusion accords with the plain language of section 1016.5, which contains no time bar." (*Id.* at p. 204.) The record does not suggest Dubon had reason to question the accuracy of the trial court's advisement until the June 1999 arrest. Thus, the People have failed to establish a lack of diligence. (*Id.* at pp. 203-207.)

of proof." (Evid. Code, § 601.) When a presumption is established to facilitate the determination of the particular action in which the presumption is applied, rather than to implement public policy, it is a presumption affecting the burden of producing evidence. (Evid. Code, § 603.) As explained in the Law Revision Commission's Comments to Evidence Code section 603, such presumptions are "not expressions of policy; they are expressions of experience." (Cal. Law Revision Com. com., 29B pt. 2 West's Ann. Evid. Code (1995 ed.) foll. § 603, p. 57.) " 'A presumption affecting the burden of producing evidence requires the ultimate fact to be found from proof of the predicate facts in the absence of other evidence. If contrary evidence is introduced then the presumption has no further effect and the matter must be determined on the evidence presented. [Citation.]' [Citation.]" (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1995) 37 Cal.App.4th 675, 682 [43 Cal.Rptr.2d 660]; Evid. Code, § 604; 1 Witkin, Cal. Evidence (4th ed. 2000) Burden of Proof and Presumptions, § 55, pp. 203-204.)

██ A presumption meant to establish or implement some public policy other than facilitation of the particular action in which it applies is a presumption affecting the burden of proof. (Evid. Code, § 605; *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd., supra,* 37 Cal.App.4th at p. 682; *In re Heather B.* (1992) 9 Cal.App.4th 535, 561 [11 Cal.Rptr.2d 891] ["a presumption affecting the burden of proof 'is established to implement some public policy other than to facilitate the particular action in which it applies' "]; *Reeves v. Workers' Comp. Appeals Bd.* (2000) 80 Cal.App.4th 22, 30 [95 Cal.Rptr.2d 74] [presumptions that reflect public policy are presumptions affecting burden of proof]; 1 Witkin, Cal. Evidence, *supra,* Burden of Proof and Presumptions, § 56, pp. 204-206.) A presumption affecting the burden of proof "has a more substantial impact in determining the outcome of litigation," (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd., supra,* at p. 682) in that it imposes upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact. (Evid. Code, § 606.)

██ We conclude that Penal Code section 1016.5 establishes a rebuttable presumption affecting the burden of proof, rather than the burden of producing evidence. Section 1016.5 clearly states that its purpose is to promote fairness by requiring appropriate warnings to defendants. It is apparent that the Legislature intended, by enacting the statutory presumption, to implement the public policy of mandating administration of the required advisements.

When a party bears the burden of proof, in order to prevail he or she must "establish by evidence a requisite degree of belief concerning a fact in the

mind of the trier of fact or the court. The burden of proof may require a party to raise a reasonable doubt concerning the existence or nonexistence of a fact or that he establish the existence or nonexistence of a fact by a preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable doubt. [¶] Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." (Evid. Code, § 115.) The language of Penal Code section 1016.5, subdivision (b), does not specify that a burden of proof higher than the preponderance of the evidence is required. Thus, the presumption places upon the People the burden of proving by a preponderance of the evidence the nonexistence of the presumed fact, i.e., that the required advisements were given. (Cf. *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd., supra,* 37 Cal.App.4th at pp. 682-683; *Perales v. Department of Human Resources Dev., supra,* 32 Cal.App.3d at pp. 341-342.)

Here, the minute order contained in the court file for case No. A796651 indicates Dubon was advised of the possible effects of his plea on any "alien/citizenship/probation/parole status." Dubon's argument, however, is premised on the view that "record," as used in Penal Code section 1016.5, means the certified reporter's transcript. The People, on the other hand, urge that the minute order qualifies as a record for purposes of section 1016.5. Neither party advances meaningful analysis on the question of whether a court's minute order should be considered a record for purposes of the statute. Section 1016.5 does not define "record," as used therein. However, we find Dubon's proposed interpretation unduly restrictive. A judicial record is defined as the "record or official entry . . . of the official act of a judicial officer, in an action or special proceeding." (Code Civ. Proc., § 1904; cf. Gov. Code, § 68151, subd. (a)(1) [defining "court record," for purposes of provisions governing management of court records, as "All filed papers and documents in the case folder"] and (3) [defining minutes as court record]; *Copley Press, Inc. v. Superior Court* (1992) 6 Cal.App.4th 106, 113 [7 Cal.Rptr.2d 841] [noting that official court minutes "accurately and officially reflect[] the work of the court"].) Likewise, Black's Law Dictionary defines record as, "A written account of some act, court proceeding, transaction, or instrument, drawn up, under authority of law, by a proper officer, and designed to remain as a memorial or permanent evidence of the matters to which it relates." (Black's Law Dict. (6th ed. 1990) p. 1273, col. 1; see also Webster's 3d New Internat. Dict. (1993) p. 1898 [one definition of record is "an official copy of the legal papers used in a case and of memoranda of the proceedings of the court"].) ▮ The court's minute order falls within these definitions, and we see no reason why a minute order cannot qualify as a "record" within the meaning of section 1016.5, subdivision (b).

However, although a minute order may under proper circumstances qualify as a "record," here the minute order stated only that Dubon was advised of possible effects on alien or citizenship status. It does not state that Dubon was given the required advisement in full, or accurately. While some courts have held the exact language of the advisement is not crucial (e.g., *People v. Soriano* (1987) 194 Cal.App.3d 1470, 1475 [240 Cal.Rptr. 328, 65 A.L.R.4th 705]), a defendant must at least be told of the immigration consequences pertinent to his or her situation. (*Zamudio, supra,* 23 Cal.4th at p. 208.) For example, in *Zamudio, supra,* at pages 207-208, the trial court had advised the defendant about possible consequences leading to deportation or affecting naturalization, but neglected to advise that the conviction might result in the defendant's being excluded from admission to the United States. (*Id.* at p. 191.) The court found that this incomplete advice could justify relief under Penal Code section 1016.5, subdivision (b), if the defendant could show prejudice on remand. (23 Cal.4th at pp. 192, 203.) Here, the record establishes that Dubon was subject to deportation, but the minute order did not specify that Dubon was advised his conviction could result in deportation; it stated only that Dubon was advised of the effect of his plea on "alien/citizenship" status. We cannot conclude the minute order reflected substantial compliance with the statute. (*Id.* at p. 208.) Thus, by itself, the minute order in this case was insufficient to establish a "record" that Dubon had received complete and accurate advisement of the immigration consequences of his plea. Accordingly, the rebuttable statutory presumption came into play.

■ However, we conclude the trial court did not err by finding the minute order, coupled with Judge Altman's testimony, sufficiently rebutted the statutory presumption of nonadvisement. First, we note that the court's minute order, while in this case not a sufficient record standing alone, nonetheless provided significant evidence rebutting the statutory presumption. Courts have found, in regard to waivers, that a minute order can establish a valid waiver where the transcript of the proceedings is silent. (*People v. Malabag* (1997) 51 Cal.App.4th 1419, 1423 [59 Cal.Rptr.2d 847] ["Absent a conflict between the transcripts, the clerk's transcript can establish a valid waiver where the reporter's transcript is silent on the matter"]; *In re Ian J.* (1994) 22 Cal.App.4th 833, 839 [27 Cal.Rptr.2d 728] [clerk's minutes were adequate substitute for verbatim record].) Here, the minutes provide a record that at least some advisements were given.

Second, Judge Altman testified that his practice was to personally advise the defendant of immigration consequences in each case. He did not rush through the plea process, but attempted to ensure each defendant understood

what was transpiring. The regular litany Judge Altman used correctly addressed each of the three advisements required by Penal Code section 1016.5. Judge Altman's written notes reflected that he was aware Dubon was Honduran. The trial court could reasonably infer that Judge Altman, aware Dubon was not a United States citizen, would have been especially careful to properly advise Dubon regarding the immigration consequences of his plea. Coupled with the minute order, this evidence allowed the trial court to reasonably infer that Dubon was actually advised of the immigration consequences of his plea, overcoming section 1016.5's presumption of nonadvisement.

Dubon contends, however, that Judge Altman's testimony was not sufficient to overcome the presumption because he "did not even know the specific wording of the statute after many years of taking thousands of pleas." However, Judge Altman's testimony, as set forth above, was that he did not remember the specific language of the statute in regard to whether, absent a record, the defendant is presumed not to have received the required advisements. When describing the actual advisement he gave to defendants, Judge Altman testified he informed defendants that entering a plea could result in deportation, denial of admission to the United States, and denial of citizenship, the three issues required to be addressed by Penal Code section 1016.5. Thus, Judge Altman's failure to recall the exact wording of the statute in regard to the effect of the absence of a record did not compel a finding that he failed to give Dubon the proper advisements.

Dubon also contends that "[t]he basic error in this case lies in the Judge's weighing the credibility of Judge Altman against that of the Petitioner, instead of weighing whether Judge Altman's testimony overcame the statutory presumption." We disagree. The trial court necessarily had to weigh Judge Altman's testimony against Dubon's testimony. Likewise, the trial court had to determine from its consideration of all the evidence, whether the People had established, by a preponderance, the nonexistence of the presumed fact, i.e., that the proper advisements were given. The trial court properly considered the minute order and Judge Altman's testimony. On the facts presented here, that evidence was sufficient to meet the People's burden of proof and rebut the statutory presumption.

Because we conclude the trial court did not err by finding Dubon was properly advised, we need not reach the question of whether Dubon's petition established prejudice.

## DISPOSITION

The order is affirmed.

Croskey, Acting P. J., and Fidler, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied October 24, 2001.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.