Filed 6/3/15  P. v. Diaz CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RICARDO DIAZ,<br><br>Defendant and Appellant. | H040396<br>(Santa Clara County<br>Super. Ct. No. CC063329)<br><br>**ORDER MODIFYING OPINION**<br><br>**NO CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed herein on May 28, 2015, be modified as follows:

1.  On page 11, the last sentence of the first partial paragraph, the word "by" is

    added between the words "used" and "Judge" so the sentence reads:

    This record is insufficient for us to determine whether the language used by
    Judge Brock in accepting defendant's no contest plea in 2000 was in
    substantial compliance with section 1016.5(a).

2.  On page 11, the first sentence of the first full paragraph, the word "the"

    between the words "from" and "Judge" is deleted so the sentence reads:

    Based upon its general office policy, the prosecution chose not to seek or
    submit a declaration from Judge Brock regarding his custom and habit in
    giving immigration advisements during the relevant period, even though he
    was apparently still serving as a judge at the time of the hearing on the motion.

There is no change in the judgment.


Dated:_____          _____
                                         Márquez, J.



                                         _____
                                         Rushing, P.J.

Filed 5/28/15 (unmodified version)

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040396 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC063329) |
| v. | |
| RICARDO DIAZ, | |
| Defendant and Appellant. | |

Before a court may accept a guilty or no contest plea, it must advise the defendant of the potential immigration consequences of his or her plea as provided in Penal Code section 1016.5, subdivision (a) (§ 1016.5(a)).[1] Where there is no record the defendant was so advised, there is a presumption he or she was not, and the prosecution bears the burden of rebutting that presumption. (§ 1016.5, subd. (b) (§ 1016.5(b)); see *People v. Arriaga* (2014) 58 Cal.4th 950, 963 (*Arriaga*).) If the advisements were not given, section 1016.5(b) provides the defendant with the remedy of moving to withdraw a guilty or no contest plea when he or she establishes that the conviction based upon that plea may have the consequence of his or her deportation, exclusion from admission in the United States, or the denial of naturalization.

---

[1] **Subsequent unspecified references are to the Penal Code.**

Defendant Ricardo Diaz appeals from an order denying a motion to withdraw his no contest plea. That motion was based upon his assertion that he had not received the requisite immigration consequences advisement. He had previously (in March 2000) pleaded no contest to infliction of corporal injury on a cohabitant, a felony. (§ 273.5(a).) The trial court had placed defendant on formal probation for three years, and defendant successfully completed his probation. But years later, in November 2012, Immigration and Customs Enforcement (ICE) initiated removal proceedings based on his felony conviction in 2000.

On appeal, defendant contends the court erred in concluding—where there was no record the court in 2000 advised him in accordance with section 1016.5(a)—the prosecution had rebutted the presumption that he had not been properly advised. The evidence supporting the court's conclusion consisted of (1) the clerk's minute order, (2) a declaration of the Deputy District Attorney handling the case in 2000, and (3) a check-the-boxes "Felony Plea Voir Dire Checklist" that had been used by the prosecutor and maintained by the District Attorney's Office.

We conclude that while the record shows that immigration advisements *of some type* were given to defendant, there is no evidence he was *properly* advised as required under section 1016.5(a). The court, in effect, exalted (a District Attorney's) form over substance in concluding that defendant was properly advised of the immigration consequences of his plea. Because we conclude there is no substantial evidence defendant received the *proper* immigration consequences advisements, we will reverse the order denying defendant's motion to withdraw his plea. We will remand this matter for further proceedings on whether defendant was prejudiced by the court's failure to properly advise him (i.e., whether he would not have pleaded no contest had the proper advisements been given).

FACTS AND PROCEDURAL HISTORY

I. *The 2000 Conviction*

On February 29, 2000, San José Police Officers responded to reported domestic violence that had occurred the previous day.  The incident was reported by Priscilla A., defendant's then-girlfriend and mother of their 16-month-old son.  Priscilla informed officers that on February 28, while in defendant's car, he struck her repeatedly.  He then drove to his home where he continued to hit Priscilla, striking her 15 to 20 times with a belt across her back, arms, and legs.  He also kicked her repeatedly and struck her with a closed fist.  Defendant stopped hitting Priscilla when his mother arrived home and interrupted him.

Defendant was charged with one felony count of inflicting corporal injury on a spouse, cohabitant, former spouse, or former cohabitant in violation of section 273.5.  On March 8, 2000, defendant pleaded no contest to the charge with the understanding he would receive probation that would include a condition that he serve one year in jail.  On April 7, 2000, in accordance with the plea agreement, the trial court placed defendant on formal probation for three years with one year in county jail as a condition of probation.  Defendant successfully completed his probation.

II. *The 2013 Motion to Withdraw Plea*

Years later, on November 8, 2012, ICE issued a Notice to Appear informing defendant he was "subject to removal from the United States" based upon his April 7, 2000 felony conviction.  Defendant was detained and placed in an ICE detention facility in Eloy, Arizona.

On May 13, 2013, defendant filed a motion to withdraw his plea "upon the grounds that the court failed to warn the defendant of the immigration consequences of a guilty plea, in compliance with Penal Code § 1016.5, and that the plea and subsequent sentencing should be vacated."  (Original underscoring.)  In his memorandum of points and authorities in support of his motion, defendant conceded that the minute order of his

3

plea hearing indicates that immigration advisements were given, but he argued, "[w]hat is not clear from the minute order is if the advisement that was reported [in] the minute order satisfied the requirements of the statute."

The People opposed defendant's motion, arguing there was sufficient evidence to demonstrate defendant was properly advised of the possible immigration consequences of his plea. Besides the minute order, the People relied on (1) a "Felony Plea Voir Dire Checklist" that had been filled out at the plea hearing by Deputy District Attorney Vonda Tracey (the prosecutor handling defendant's case in 2000); and (2) Tracey's declaration, stating it was her "habit and custom to make sure a defendant was advised of the consequences of his plea." Tracey also declared that her checklist showed she "marked off all the advisements as having been given as indicated [¶] . . . including . . . Penal Code section 1016.5, consequences of deportation, exclusion, and denial of naturalization if defendant was not a United States Citizen . . ."

At the hearing, on September 4, 2013, the People acknowledged "there is not a clear record that indicates whether the defendant was advised [of the immigration consequences of his plea] due to the prolonged time between the plea and now . . ." This prompted the court to inquire whether the District Attorney's Office had contacted the court reporter to confirm the unavailability of a transcript of the plea hearing. The following colloquy between the court and Deputy District Attorney Tyrone Wilson ensued:

"[Prosecutor]: We—we've tried, your Honor, yes."

"[The Court]: Well, tried—"

"[Prosecutor]: But we—but we haven't been able to be in contact with him. Well, your Honor, we have tried to locate the court reporter, but we were not able to. So, your Honor, we went forth with the declaration and the voir-dire check—voir-dire checklist."

"[The Court]: All right . . ."

4

The court next inquired about the People's decision to submit a declaration from Tracey in lieu of a declaration from Judge Jerome Brock, the trial judge who took defendant's plea in 2000:

"[The Court]: All right. Well, let me ask you this: So you're aware there are cases that have held that a box checked by the clerk, plus the declaration of the custom and practice of the judicial officer, has been found to be sufficient to show advisement. Are you aware of that, Mr. Wilson?"

"[Prosecutor]: Yes, your Honor."

"[The Court]: All right. And why was that not done in this case?"

"[Prosecutor]: Your Honor, it is our policy at this point in time to not request that from the Court."

"[The Court]: Why not? I mean, it's Judge Brock; right?

"[Prosecutor]: Yes, your Honor."

"[The Court]: I saw him last week. So pretty sure we can find him."

"[Prosecutor]: I understand, your Honor. And that is something that I have brought to the attention to my office—I brought that to the attention of my office, your Honor. However, there are circumstances when we do have—or we have had in the past, your Honor, where affidavits have been signed where, you know—where sometimes it's––the judge has no recollection. And even though he's to say it's his practice and custom to give the advisement, we find out later that in one circumstance he may have not given the advisement. [¶] We—your Honor, at this point in time, our office does not wish to put judges in that predicament, to provide declarations and—and—and possibly stating something that may not always be true."

The court and Deputy District Attorney Wilson continued to discuss declarations made on the basis of custom and habit, during which the court said: "Well, do you think the Court has the authority to seek the evidence? . . . there's a—appears to be a published opinion that—where the same was found insufficient, and yet there [are] published

5

opinions which say a declaration in—by support with the Court, in addition to the clerk's minute order, is sufficient. And the [D]istrict [A]ttorney keeps filing these motions that [do] not contain available evidence that can be produced or—and there hasn't been an explanation as to why that isn't being produced. [¶] And I'm essentially indicating I want to get to the truth, and I'd like to know whether Judge Brock has any independent recollection and whether Judge Brock's practice was to—at that time was to include this. It might not have."

The court went on to note that "there [were] periods of time where some [judge's] scripts did not include the immigration advisement, but that may or might not be something that a particular judge could swear to—that they didn't—they didn't have it in their routine at the time or they did. But it does seem like relevant evidence for the Court to consider."

During the hearing, defense counsel advised the court that it was difficult to secure defendant's testimony because he was in ICE custody in Eloy, Arizona. Defense counsel made an offer of proof, but did not submit defendant's declaration because counsel anticipated his client would be permitted to testify by telephone. Because the defendant was unable to testify telephonically, defense counsel requested time to secure a declaration from defendant that would address whether he was prejudiced by the claimed failure of the court to advise him of the immigration consequences of his plea. The court stated, "Why don't we set a new date. I'm going to take under submission the portion of the sufficiency of the advisement . . . And then that will also give an opportunity for counsel to prepare a declaration."

On September 19, 2013, before defendant submitted a declaration, the trial court denied defendant's motion, finding it was more likely than not that defendant had received the proper immigration advisements. In its order, the court presumed that "because more than 10-years have passed since the entry of the plea, and court reporters are only required to keep records transcribing court proceedings for 10 years in non-

6

capital cases, there is no reporter's transcript of defendant's plea."[2]  The court also noted that "[t]he People indicated at oral argument that they tried and were unable to locate the court reporter who transcribed defendant's plea."  But in a footnote, the court said, "[t]he People must not have tried very hard.  The Court had one phone call made to the court reporter's phone number listed in court records and received a call back from the court reporter."  Because the court denied the motion based upon its finding that the advisement of immigration consequences was sufficient, the issue of prejudice became moot.  Defendant therefore never submitted a declaration on that issue.

Defendant timely appealed the court's order denying his motion.  He also moved to augment the record with the declaration he had intended to submit to the trial court in connection with his motion.  We denied defendant's motion to augment the record.

## DISCUSSION

### I.     *Motion to Withdraw Plea Under Section 1016.5*

Section 1016.5(a) requires the trial court, prior to accepting a plea of guilty or nolo contendere, to give the defendant the following advisement on the record:  "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."  Upon receiving the advisements, "[t]he section contemplates a period during which the defendant, without risking the loss of the existing plea bargain, can reconsider its value in

---

[2] **We observe that in numerous instances in this court and in other California appellate courts, the issue of the court's having given proper immigration consequences advisements has arisen primarily because, due to the length of time between the conviction and the motion to withdraw plea made under section 1016.5(b), no reporter's transcript of the taking of the plea was available.  The Legislature could significantly reduce the amount of trial and appellate litigation on this issue by amending Government Code section 69955, subdivision (e) to increase the length of time (currently 10 years) that court reporters are required to retain their notes in criminal (noncapital) proceedings.**

7

light of the immigration consequences that will result from it and attempt to negotiate a different bargain that will not have the same consequences." (*People v. Martinez* (2013) 57 Cal.4th 555, 562 (*Martinez*), citing § 1016.5, subds. (b), (d).)

The legislative purpose of section 1016.5 is expressly stated in the statute: "[I]t is the intent of the Legislature in enacting this section to promote fairness to such accused individuals by requiring in such cases that acceptance of a guilty plea or plea of nolo contendere be preceded by an appropriate warning of the special consequences for such a defendant which may result from the plea." (§ 1016.5, subd. (d).) If a noncitizen defendant is not properly advised of the immigration consequences of his or her guilty or no contest plea, the statute provides a remedy: "[I]f . . . the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense . . . may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty." (§ 1016.5(b).)

Section 1016.5(b) establishes a presumption of nonadvisement in certain circumstances: "Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement." The California Supreme Court has emphasized "the presumption … is controlling unless and until the prosecution rebuts it by proving it is more likely than not that the defendant *was* properly advised." (*Arriaga*, *supra*, 58 Cal.4th at p. 963, italics original.)

Although the trial court need not recite the advisements in section 1016.5 verbatim, substantial compliance with the statute is required. (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 208 (*Zamudio*).) Substantial compliance means that language functionally equivalent to each of the three "terms of art" cited in the statute (deportation, denial of naturalization, and exclusion from the United States) must be

8

provided, if they are a consequence to the defendant's plea and "pertinent to his situation." (*Id.* at pp. 207-208.)

## II. Standard of Review

An order denying a motion to withdraw plea under section 1016.5 is reviewed for an abuse of discretion. (*Zamudio*, *supra*, 23 Cal.4th at p. 191.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712 (*Haraguchi*).)

"[T]he legislative purpose of section 1016.5 is to ensure a defendant is advised of the immigration consequences of his plea and is given an opportunity to consider them. So long as the advisements are given, the language of the advisements appears in the record for appellate consideration of their adequacy, and the trial court satisfies itself that the defendant understood the advisements and had an opportunity to discuss the consequences with counsel, the legislative purpose of section 1016.5 is met. [Citation.]" (*People v. Ramirez* (1999) 71 Cal.App.4th 519, 522 (*Ramirez*), citing *People v. Quesada* (1991) 230 Cal.App.3d 525, 535-536.)

"To prevail on a section 1016.5 motion, a defendant must establish (1) that the advisements were not given; (2) that the conviction may result in adverse immigration consequences; and (3) that the defendant would not have pled guilty or no contest had proper advisements been given." (*Arriaga*, *supra*, 58 Cal.4th at pp. 957-958, citing *Martinez*, *supra*, 57 Cal.4th at pp. 558-559.)

## III. Reversal Is Required Because The Language of the Advisements Does Not Appear in the Record

It is undisputed that the People did not provide the court with a transcript of the 2000 plea hearing. Without a court record, the People were required, by a preponderance

9

of the evidence, to rebut the presumption that the advisements were not given. (*Arriaga*, *supra*, 58 Cal.4th at p. 963.) The minute order from the plea hearing indicates that the immigration advisements were given. But a minute order, without additional support, is "insufficient to establish a 'record' that [the defendant] had received complete and accurate advisement of the immigration consequences of his plea." (*People v. Dubon* (2001) 90 Cal.App.4th 944, 955 (*Dubon*).)

In *Dubon*, a minute order showing the advisements had been given was accompanied by testimony from the trial judge who had taken the plea that it was his custom and practice to give the immigration advisements, make sure the defendant understood the advisements, and inform "defendants that entering a plea could result in deportation, denial of admission to the United States, and denial of citizenship, the three issues required to be addressed by Penal Code section 1016.5." (*Dubon*, *supra*, 90 Cal.App.4th at p. 956.) The court held this was sufficient to overcome the presumption of nonadvisement. (*Ibid*.)

The presumption of nonadvisement can be overcome in other ways. In *Arriaga*, for example, the California Supreme Court held the immigration advisements were properly given when, in addition to the minute order, the prosecutor testified that "it was his practice to always advise defendants of the immigration consequences . . . [and] recited in detail his oft-given advisement of immigration consequences." (*Arriaga*, *supra*, 58 Cal.4th at pp. 963-964.) And in *Ramirez*, the court held that a copy of the change of plea form, signed by the defendant, was sufficient to show the advisements were given because the appellate court was "able to review the adequacy of the language used" and the defendant "was warned of all three possible consequences in precise statutory language." (*Ramirez*, *supra*, 71 Cal.App.4th at p. 523.)

The common element among *Dubon*, *Arriaga*, and *Ramirez* is the existence of some evidence of the language actually used in the advisement given so the trial court hearing the defendant's motion to withdraw plea may exercise its discretion in

determining whether the language complied or substantially complied with the requirements of section 1016.5(a). We agree that evidence of the language used by the trial court in the advisement is necessary on review to determine whether there has been substantial compliance with section 1016.5(a) justifying denial of the motion to withdraw plea. Here, the People presented three documents to rebut the presumption of nonadvisement: (1) the minute order with the box next to "Immig." checked; (2) the "Felony Plea Voir Dire Checklist" from the District Attorney's Office with a check next to "Deportation, exclusion, denial or naturalization if not US Citizen (PC 1016.5)"; and (3) the declaration of Deputy District Attorney Tracey stating it was her habit and custom to fill out the checklist when she heard the admonishments given and acknowledged by the defendant. This record is insufficient for us to determine whether the language used Judge Brock in accepting defendant's no contest plea in 2000 was in substantial compliance with section 1016.5(a).

Based upon its general office policy, the prosecution chose not to seek or submit a declaration from the Judge Brock regarding his custom and habit in giving immigration advisements during the relevant period, even though he was apparently still serving as a judge at the time of the hearing on the motion. (See *Dubon*, *supra*, 90 Cal.App.4th at p. 956.) Nor did the prosecutor's declaration provide the language of the immigration advisements that were apparently given in this case. (See *Arriaga*, *supra*, 58 Cal.4th at p. 963.) And no other document, such as a plea form (see *Ramirez*, *supra*, 71 Cal.App.4th at p. 523), specified the language of the advisements given. Absent evidence of the language actually used, the trial court could not have properly exercised its discretion in determining whether the advisements complied with section 1016.5(a).

Because there was no reporter's transcript, the People were required to rebut the presumption that defendant was *not* advised in compliance with the statute by presenting evidence that it was more likely than not that he *was* so advised. (*Arriaga*, *supra*, 58 Cal.4th at p. 963.) This required more than a showing that *some form* of advisements

11

were given.  The People had the burden of "proving it is more likely than not that the defendant was *properly advised*."  (*Id.* at p. 963, italics added.)  While a proper advisement does not require an exact recitation of the language of section 1016.5, there must be substantial compliance, meaning the defendant must be advised using language functionally equivalent to each of the three "terms of art" cited in the statute.  (*Zamudio*, *supra*, 23 Cal.4th at pp. 207-208.)

Here, while there was evidence from which the trial court could have exercised its discretion to find that defendant had been *advised in some manner* of the potential immigration consequences of this plea, there was no evidence from which the trial court could conclude the advisement was *proper*, i.e., the language of the advisement substantially complied with section 1016.5(a).  Because there is no evidence in the record indicating what *specific* immigration consequences advisements were given by the trial court at the time it accepted defendant's no contest plea, we conclude there is no substantial evidence supporting the trial court's finding that the court in 2000 gave the *proper* advisement in compliance with the statute.  On this record, the court's "application of the law to the facts . . . [was] arbitrary and capricious."  (*Haraguchi*, *supra*, 43 Cal.4th at pp. 711-712.)  Therefore, the trial court abused its discretion in denying defendant's motion.  (See *People v. Knoller* (2007) 41 Cal.4th 139, 156 [trial court abuses its discretion when it bases its decision on improper factors or on an incorrect legal standard].)[3]

_____

**[3] The dissent correctly notes that "[t]his court has a limited role in assessing the sufficiency of the evidence" and we may not reweigh the evidence or decide issues concerning a witness's credibility.  (Dissenting opn. at p. 3.)  In concluding there was no substantial evidence that defendant received *proper* advisements, we adhere to those principles.  We simply conclude that the clerk's minutes, the District Attorney's form checklist, and Deputy District Attorney Tracey's declaration collectively did not constitute substantial evidence that defendant was properly advised in compliance with section 1016.5(a), because there is nothing in the record to indicate defendant "had received [a] *complete and accurate advisement* of the**

12

The trial court did not decide whether defendant had established the two remaining elements required to withdraw his plea under section 1016.5. Under the second element, a defendant must establish "that the conviction may result in adverse immigration consequences." (*Arriaga*, *supra*, 58 Cal.4th at p. 958.) The People conceded in their opposition to the motion that "there exists, at the time of the motion, more than a remote possibility that the conviction [*sic*] [defendant seeks to vacate will have . . .] adverse immigration consequences." We accept that concession. Defendant was issued a Notice to Appear by Immigration and Customs Enforcement, notifying him that he was subject to removal based on the April 7, 2000 conviction, and was placed in an ICE detention facility in Eloy, Arizona.

Under the third element, defendant must show he would not have pleaded guilty or no contest had proper advisements been given. (*Arriaga*, *supra*, 58 Cal.4th at pp. 957-958, citing *Martinez*, *supra*, 57 Cal.4th at pp. 558-559.) Because defendant was unable to appear and testify as to this third element, and the matter was decided before defendant was able to file his declaration with the trial court, we will remand this matter with instructions that the trial court accept defendant's declaration for filing, and that it proceed to adjudicate defendant's motion in a manner consistent with this opinion. We express no opinion as to the merits of this third element.

DISPOSITION

The trial court's order denying defendant's motion to withdraw his plea under Penal Code section 1016.5 is reversed, and this matter is remanded for further hearings consistent with this opinion.

---

immigration consequences of his plea." (***Dubon***, ***supra***, **90 Cal.App.4th at p. 955, italics added.)**

13

_____

Márquez, J.

I CONCUR:

_____

Rushing, P. J.

ELIA, J., Dissenting

I find the evidence sufficient to support the trial court's ruling denying defendant's motion to vacate the judgment pursuant to Penal Code section 1016.5.[1]  Accordingly, I respectfully dissent.

Prior to accepting a plea of guilty or no contest, trial courts must advise: "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (§ 1016.5, subd. (a).)  "If . . . the court fails to advise the defendant as required by [section 1016.5] and the defendant shows that conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty.  Absent a record that the court provided the advisement required by [section 1016.5], the defendant shall be presumed not to have received the required advisement." (§ 1016.5, subd. (b).)

The California Supreme Court has established that "the presumption of nonadvisement established by section 1016.5's subdivision (b) is controlling unless and until the prosecution rebuts it by proving it is more likely than not that the defendant *was* properly advised." (*People v. Arriaga* (2014) 58 Cal.4th 950, 963, original emphasis.)  "[T]he applicable standard of proof is preponderance of the evidence." (*Id*. at p. 962.)

---

[1] **All further statutory references are to the Penal Code unless otherwise stated.**

In this case, the trial court found that the requisite advisement of immigration consequences was given and denied defendant's motion to vacate pursuant to section 1016.5  The court explained its ruling:  "Defendant underestimates the force of the evidence presented here.  The People did not offer the deputy district attorney's declaration and felony voir dire checklist instead of the clerk's order, but in addition to it.  The persuasiveness of circumstantial evidence often comes from its accumulation.  Moreover, dismissing the deputy district attorney's declaration and accompanying voir dire checklist as merely an 'adversary's notes' fails to give the voir dire checklist its appropriate weight.  True, the deputy district attorney represents an adverse party, but that party has a significant interest in ensuring the validity of the guilty pleas in the cases it prosecutes.  Indeed, the plain purpose of the voir dire checklist is to make certain that the proper advisements are given.  The voir dire checklist exists to double-check the judge's voir dire.  It seems extremely unlikely here that both the clerk of the court and the deputy district attorney assigned to take the plea both mistakenly checked immigration advisement box—especially when the voir dire checklist mirrors the required language of Penal Code section 1016.5 and the checklist exists for the specific purpose of ensuring proper advisements."

We review the trial court's ruling denying defendant's motion to vacate judgment for abuse of discretion.  (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 192.)  Under the abuse of discretion standard of review, " '[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' (*Haraguchi v. Superior Court* [(2008)] 43 Cal.4th [706,] 711-712, fns. omitted.)"  (*Packer v. Superior Court* (2014) 60 Cal.4th 695, 710.)  Here, the trial court was persuaded by the requisite degree of

2

proof that defendant had received the proper advisement regarding immigration consequences. Its determination was essentially a finding of fact.

On appeal, our review of the sufficiency of the evidence is the same regardless of the People's burden of proof below. (See *People v. Ruiloba* (2005) 131 Cal.App.4th 674, 682.) We uphold the trial court's factual determinations if supported by substantial evidence. (See *People v. Carpenter* (1999) 21 Cal.4th 1016, 1040.)

This court has a limited role in assessing the sufficiency of the evidence. "A reviewing court neither reweighs evidence nor reevaluates a witness's credibility. [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) The substantial evidence standard of review requires an appellate court to accept reasonable inferences drawn from the evidence by the trier of fact. " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" (*People v. Bean* (1988) 46 Cal.3d 919, 933.)

" ' "To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." ' [Citation.]" (*People v. Maciel* (2013) 57 Cal.4th 482, 519.)

In this case, the clerk's minute order of defendant's March 8, 2000 plea hearing in Case No. CC063329, reflected, by the check of boxes, that defendant was "[a]dvised" regarding "[i]mmig." The declaration of Deputy District

3

Attorney (DDA) Vonda Tracy, made under penalty of perjury, disclosed that she was the attorney assigned to represent the People when defendant entered his change of plea on March 8, 2000.[2]

In her declaration, DDA Tracy stated that she had reviewed the minutes of the plea and the District Attorney's Felony Plea Voir Dire Checklist for the defendant. She recognized the writing on the document as her own. The Felony Plea Voir Dire Checklist identifies the defendant as Ricardo Diaz and specifies Docket No. CC063329. On the District Attorney's checklist, under the heading "CONSEQUENCES OF PLEA," there is a checkmark next to the following preprinted language: "Deportation, exclusion, denial of naturalization if not US Citizen (PC 1016.5)."

DDA Tracy further states in her declaration: "While I do not have an independent recollection of the taking of the plea, it was my habit and custom to make sure a defendant was advised of the consequences of his plea and acknowledged the same by marking off each right or consequences [*sic*] as it was given and acknowledged in open court to the defendant by the judge or the attorneys at the time of the change of plea to guilty or no contest. In conformity with that habit and custom, the attached checklist shows I marked off all the advisements as having been given as indicated." She declared that the checklist "memorializes that the defendant was advised of the consequences of his plea, including . . . the Penal Code section 1016.5[] consequences of deportation,

---

**[2] The California Supreme Court has "decline[d] to burden trial courts with a requirement that they conduct live evidentiary hearings on all section 1016.5 motions." (*People v. Superior Court* (*Zamudio*), *supra*, 23 Cal.4th at p. 201.)**

exclusion, and denial of naturalization if defendant was not a United States Citizen . . . ."[3]

"Any otherwise admissible evidence of habit or custom is admissible to prove conduct on a specified occasion in conformity with the habit or custom." (Evid. Code, § 1105.)  "Section 1105 is technically unnecessary because Section 351 declares that all relevant evidence is admissible."  (Cal. Law Revision Com. com., 29B pt. 3B West's Ann. Evid. Code (2009 ed.) foll. § 1105, p. 336.) A DDA's testimony or statement under penalty of perjury to the effect that her regular practice was to check the box indicating that defendant was advised of the three possible immigration consequences after she heard the defendant being advised as required by section 1016.5 constitutes relevant evidence.  (Evid. Code, §§ 210 [definition of "relevant evidence"], 351 [in general, all relevant evidence is admissible].)  The is no legal requirement that evidence be presented from the judge who had the duty to give the section 1016.5 advisement, or the actual person who advised defendant, to overcome the presumption of nonadvisement.  That judge or person may be deceased or otherwise unavailable.  The prosecutor may decide that evidence from the DDA who was present at the time of a defendant's plea is more persuasive in a particular case.

DDA Tracy's declaration, which the trial court credited, together with the Felony Plea Voir Dire Checklist, supported a reasonable inference that she was present when defendant was advised of all three potential immigration

---

**3 At oral argument, defendant made much of the fact that the checklist, in specifying the three separate possible immigration consequences, states "exclusion" rather than "exclusion from admission."  That abbreviated description on the checklist memorializes that the requisite advisement was given and it is not the advisement itself.  Moreover, "only substantial compliance is required under section 1016.5 as long as the defendant is specifically advised of all three separate immigration consequences of his plea." (*People v. Gutierrez* (2003) 106 Cal.App.4th 169, 174.)**

5

consequences pursuant to section 1016.5 and she contemporaneously checked off the box on her checklist. That inference is buttressed by the minute order. Even *People v. Dubon* (2001) 90 Cal.App.4th 944, which the majority opinion cites, recognized that a minute order indicating only that defendant was advised of possible effects of a plea on any alien status, while it was "not a sufficient record standing alone," "nonetheless provided significant evidence rebutting the statutory presumption." (*Id.* at p. 955.)

In *People v. Arriaga*, *supra*, 58 Cal.4th 950, the California Supreme Court acknowledged: "There will be circumstances . . . under which the trial court may properly conclude that the prosecution has not rebutted the nonadvisement presumption. For instance, both the original prosecutor and the trial judge may be unavailable to testify; their testimony about what occurred at the plea hearing may prove less persuasive than the defendant's testimony; or the minute order for the plea hearing, by the absence of any notation that the defendant was advised, may strongly support an inference that advisements were *not given* . . . ." (*Id.* at p. 963.) Those circumstances are not present here.[4]

I would affirm the trial court's order denying defendant's motion to withdraw his plea under section 1016.5.

---

**[4] Defendant submitted no declaration and made no offer of proof tending to impeach DDA Tracy's credibility.**

_____

ELIA, J.